UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KIMBERLY F. GODON,
            *Plaintiff-Appellant,*

v.

NORTH CAROLINA CRIME CONTROL &
PUBLIC SAFETY; NORTH CAROLINA
TARHEEL CHALLENGE ACADEMY;
KENNETH STALLS, in his individual
and official capacities; DALE AUTRY,
in his individual and official
capacities; LESLIE T. EVERETT, in his
individual and official capacities;
STATE OF NORTH CAROLINA,
            *Defendants-Appellees.*

No. 99-2509

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-96-804-5-BO)

Argued: October 31, 2000

Decided: November 30, 2000

Before WILKINSON, Chief Judge, and NIEMEYER and
MOTZ, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

---

**COUNSEL**

**ARGUED:** David Garrett Schiller, Raleigh, North Carolina, for Appellant. Isaac T. Avery, III, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Marvin Schiller, Raleigh, North Carolina, for Appellant. Reuben F. Young, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Kimberly Godon, a former contract employee of the North Carolina Tarheel Challenge Academy, a State operated "boot camp" for youths who have failed to complete high school, filed this action under 42 U.S.C. §§ 1983 & 1985 (for First Amendment violations), Title VII of the Civil Rights Act, and state law, challenging the Academy's termination of her employment contract. Godon alleges that she was fired after complaining about the Academy's discriminatory treatment of female and black cadets. The Academy categorically denies that allegation and, instead, asserts that Godon's dismissal followed a long line of infractions, culminating in her conduct in giving female cadets permission to sleep together in direct violation of Academy rules and informing the cadets that she had been placed on probationary status by her supervisors.

The proceedings have been protracted, including an earlier review by this court of the district court's Rule 12(b)(6) dismissal. *See Godon v. North Carolina Crime Control & Pub. Safety*, No. 97-1458, 1998 WL 193109 (4th Cir. April 23, 1998) (unpublished). In that decision, we affirmed the district court's dismissal of Godon's Title VII claim

and remanded the case for further proceedings on Godon's First Amendment claim brought under 42 U.S.C. § 1983.

On remand, the record was developed only in a limited manner through affidavits. The State officers filed affidavits denying that Godon approached them with concerns about discrimination and alleging that Godon was fired, instead, for poor job performance and her negative attitude, which set a bad example for the cadets. They also filed an affidavit denying that cadets identified by Godon as victims of discrimination were in fact victims of discrimination.

Godon filed affidavits alleging that the reasons given by the officers for her dismissal were false. The former executive secretary of the Academy stated that "Godon was among the very best Team Leaders," and alleged that another supervisor praised Godon's performance at the Academy. Godon also produced her own affidavit, reasserting her claim that she was fired merely because she complained to the defendants about the Academy's discriminatory practices and denying that she had a negative attitude. She averred that a State employee told her about conversations with the defendants, revealing a "plan to turn the Academy into an all white male academy." She also averred that when she presented that information to the defendants, they told her "to shut up, put up with it, or get out." These defendants also allegedly told Godon that "they were running the show now and if it were an all white academy, there would not be as many problems."

The district court acknowledged some ambiguity about the role that Godon's allegations played in her termination. The court stated:

> Plaintiff was being disciplined during the months of April and May, and it is far from clear that her complaints predated these disciplinary measures, the first of which was received on April 3. It is not unlikely, given these dates, that Plaintiff first raised the issue of discriminatory dismissal once her own job performance was already at issue. Having students from her class dismissed may have reflected unfavorably on her job performance, and therefore, Plaintiff had a personal interest in finding other reasons for their dismissal. In that case, Plaintiff's real, private concern about

her position at the Academy would belie her apparent concern about a matter of public interest. Furthermore, it is unclear whether Plaintiff raised the issue of discrimination on the occasions throughout April in which she approached her supervisors to complain about a student's dismissal. She does not say whether at those meetings she objected on grounds of discrimination, or whether she merely objected to being excluded from these decisions.

But the court granted the defendants' motion for summary judgment on immunity grounds and declined to exercise pendent jurisdiction over the state law claims. As to its dismissal of the State defendants and the individual defendants in their official capacity, the district court relied on the Eleventh Amendment. With respect to its dismissal of the claims against the individuals in their individual capacity for money damages, the court relied on principles of qualified immunity. The court reasoned that because Godon's statements were not "clearly addressing a matter of public concern," her allegations did not state a claim under clearly established law, and qualified immunity therefore applied.

For the reasons given by the district court, we affirm its dismissal of the State defendants and the individual defendants in their official capacity. On the qualified immunity rulings, however, we conclude that factual questions persist, some of which the district court seems to have recognized. The current forecast of the evidence, when viewed in a light most favorable to Godon, tends to show that she was terminated because she spoke as a citizen on matters of public concern. *See Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 354-58 (4th Cir. 2000); *Cromer v. Brown*, 88 F.3d 1315, 1325-29 (4th Cir. 1996). Nevertheless, the scant record and the parties' discussion at oral argument raise significant doubts about the ultimate viability of Godon's claims, particularly with regard to her ability to prove: 1) that the context of her speech was such that she was in fact speaking on a matter of public concern; and 2) that her exercise of rights protected by the First Amendment was a but-for cause of her termination. Accordingly, in vacating the order of summary judgment, we do not intimate that the district court must foreclose further pretrial proceedings. Limited discovery on these narrow questions

could permit the district court to resolve this case without holding a trial.

   In sum, we affirm the district court's ruling dismissing the State defendants and the individual defendants in their official capacity, and we remand Godon's claims against the individual defendants in their personal capacity for further proceedings.

*AFFIRMED IN PART, VACATED*
*IN PART, AND REMANDED*